**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**AUBHRENY DAVIS,**
c/o her attorneys Tittle & Perlmuter
4106 Bridge Avenue
Cleveland, OH 44113

On behalf of herself and all others similarly situated,

Plaintiff,

v.

**NORTHPOINT SENIOR SERVICES, LLC dba PRESTIGE HEALTHCARE,**
7400 New LaGrange Road, Suite 400
Louisville, KY 40222

and

**ARK OPCO GROUP, LLC**
c/o Corporation Service Company
251 Little Falls Drive
Wilmington, DE 19808

and

**STOW OPCO, LLC**
c/o Corporation Service Company
1160 Dublin Road, Suite 400
Columbus, Ohio 43215

Defendants.

CASE NO.

JUDGE

**PLAINTIFF'S CLASS AND COLLECTIVE ACTION COMPLAINT UNDER THE FAIR LABOR STANDARDS ACT AND STATE LAW WITH JURY DEMAND**

Plaintiff Aubhreny Davis ("Plaintiff"), through counsel, for her Class and Collective Action Complaint against Defendants Northpoint Senior Services, LLC dba Prestige Healthcare (

("Prestige Healthcare"), Ark Opco Group, LLC, and Stow Opco, LLC (collectively "Defendants"), states and alleges as follows:

## INTRODUCTION

1. This case challenges Defendants' timekeeping and pay practices by which they willfully violated their employees' rights under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219 and Ohio's common law of unjust enrichment.

2. Plaintiff brings this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b), which provides that "[a]n action to recover the liability" prescribed by the FLSA "may be maintained against any employer . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." Plaintiff brings this case on behalf of herself and other "similarly-situated" persons who may join the case pursuant to § 216(b) (the "Potential Opt-Ins").

3. Plaintiff also brings this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and other members of one class of persons (the "Class Members"), defined herein below, who assert factually-related claims under Ohio's common law of unjust enrichment.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

5. This Court has supplemental jurisdiction over Plaintiff's state-law claims because those claims are so related to the FLSA claims as to form part of the same case or controversy.

6. Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391(b) because one or more Defendants reside in this district and division and a substantial

part of the events or omissions giving rise to Plaintiff's claims occurred here.

## PARTIES

7. At all times relevant, Plaintiff Aubhreny Davis was a citizen of the United States and a resident of Summit County, Ohio. Her consent to join this lawsuit, and that of Opt-In Plaintiff Joyce Redmond, are attached.

8. Defendant Prestige Healthcare is a Kentucky limited liability corporation that conducts business through its operational/managerial control, particularly by owners Craig Flashner and Yitzchok Perlstein, of sixteen skilled nursing, assisted living, memory care, long term care, and/or rehabilitation centers throughout Ohio, including facilities in this district and division. Those facilities are referred to collectively as "Arbors of Ohio" hereinafter.

9. Defendant Ark Opco Group, LLC is a Delaware limited liability corporation also owned/operated by Craig Flashner and Yitzchok Perlstein. Ark Opco Group is the 100% owner of all Arbors of Ohio facilities.

10. Defendant Stow Opco is a Delaware limited liability corporation, incorporated by Defendant Prestige Healthcare, that owned and operated its business, a skilled nursing care and rehabilitation facility known as Arbors at Stow located at 2910 L'Ermitage Place, Stow, Ohio 44224.

## FACTUAL ALLEGATIONS

### Defendants' Statuses As "Employers" of Plaintiff and Those Similarly Situated

11. Defendant Stow Opco was an "employer" of Plaintiff within the meaning of the FLSA, 29 U.S.C. § 203(d), and O.R.C. § 4111.03(D)(2) as it is listed as Aubhreny Davis' employer on her W-2.

12. Defendant Prestige Healthcare was an "employer" of Plaintiff, as well as all putative Opt-Ins and Class Members, within the meaning of the FLSA, 29 U.S.C. § 203(d), and O.R.C. § 4111.03(D)(2) in that it had authority to, and did in fact, promulgate work rules, payroll rules, and assignments and to set the employees' conditions of employment. In fact, Aubhreny Davis' employee handbook (depicted below), expressly states that she was a "Prestige Employee":




13. Defendant Ark Opco Group, LLC was an "employer" of Plaintiff, as well as all putative Opt-Ins and Class Members, within the meaning of the FLSA, 29 U.S.C. § 203(d), and O.R.C. § 4111.03(D)(2) in that it was an owner with operational control over the employees at

all Arbors of Ohio facilities. The timekeeping and pay practices at issue were created not individual facility level, but rather by Ark Opco Group, LLC and Prestige Healthcare.

14. Defendants were all "employers" of Plaintiff, the Potential Opt-Ins, and the Potential Class Members pursuant to 29 U.S.C. § 203(d) and O.R.C. § 4111.03(D)(2) in that they "act[ed] directly or indirectly in the interest of an employer in relation to . . . employee[s]," including Plaintiff, the Potential Opt-Ins, and the Class Members.

15. At all times relevant, Defendants were, individually and jointly, an enterprise within the meaning of 29 U.S.C. § 203(r), and an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1).

**Defendants' Joint Enterprise of Nursing Home Ownership/Operation and Formation of an Integrated Enterprise**

16. Craig Flashner and Yitzchok Perlstein, through their companies, Defendants Prestige Healthcare and Ark Opco Group, operate the Arbors of Ohio as a common and integrated business enterprise. The sixteen facilities in that chain are as follows: Arbors at Carroll, Arbors at Gallipolis, Arbors at Marietta, Arbors at Milford, Arbors at Pomeroy, Arbors at Woodsfield, Arbors at Delaware, Arbors at Springfield, Arbors West, Arbors at Fairlawn, Arbors at Mifflin, Arbors at Minerva, Arbors at Oregon, Arbors at Streetsboro, Arbors at Stow (nominally operated by Stow Opco), Arbors at Sylvania, and Arbors Landing.

17. Craig Flashner and Yitzchok Perlstein created sixteen LLC's, one of them being Stow Opco, LLC for Arbors at Stow, to function as the W-2 employers of the staff working in their sixteen Ohio nursing homes.

18. Those sixteen businesses do not function independently but rather jointly employ, along with Defendants Prestige Healthcare and Ark Opco Group, all staff in their buildings.

19. All sixteen Arbors of Ohio facilities report to the federal government's Centers for Medicare and Medicaid Service that they are owned by Ark Opco Group and operated by Flashner and Perlstein:

Owners and managers of Arbors at Stow

OWNER

| 5% or greater direct ownership interest | |
|---|---|
| ARK OPCO GROUP, LLC (100%) | since 07/01/2015 |

| 5% or greater indirect ownership interest | |
|---|---|
| B&Y HEALTHCARE S CORP | since 07/01/2015 |
| B&Y TRUST | since 07/01/2015 |
| CODY HEALTHCARE S CORP | since 07/01/2015 |
| CRAIG FLASHNER 2007 TRUST | since 07/01/2015 |

| OPERATIONAL/MANAGERIAL CONTROL | |
|---|---|
| FLASHNER, CRAIG | since 07/01/2015 |
| NOBLE HEALTHCARE MANAGEMENT, LLC | since 07/01/2015 |
| PERLSTEIN, YITZCHOK | since 07/01/2015 |
| PRESTIGE ADMINISTRATIVE SERVICES, LLC | since 01/01/2016 |

Owners and managers of Arbors at Fairlawn The

OWNER

| 5% or greater direct ownership interest | |
|---|---|
| ARK OPCO GROUP, LLC (100%) | since 07/01/2015 |

| 5% or greater indirect ownership interest | |
|---|---|
| B&Y HEALTHCARE S CORP | since 07/01/2015 |
| B&Y TRUST | since 07/01/2015 |
| CODY HEALTHCARE S CORP | since 07/01/2015 |
| CRAIG FLASHNER 2007 TRUST | since 07/01/2015 |

| OPERATIONAL/MANAGERIAL CONTROL | |
|---|---|
| FLASHNER, CRAIG | since 07/01/2015 |
| NOBLE HEALTHCARE MANAGEMENT, LLC | since 07/01/2015 |
| PERLSTEIN, YITZCHOK | since 07/01/2015 |
| PRESTIGE ADMINISTRATIVE SERVICES, LLC | since 01/01/2016 |

Owners and managers of Arbors at Streetsboro

OWNER

| 5% or greater direct ownership interest | |
|---|---|
| ARK OPCO GROUP, LLC (100%) | since 07/01/2015 |

| 5% or greater indirect ownership interest | |
|---|---|
| B&Y HEALTHCARE S CORP | since 07/01/2015 |
| B&Y TRUST | since 07/01/2015 |
| CODY HEALTHCARE S CORP | since 07/01/2015 |
| CRAIG FLASHNER 2007 TRUST | since 07/01/2015 |

| OPERATIONAL/MANAGERIAL CONTROL | |
|---|---|
| FLASHNER, CRAIG | since 07/01/2015 |
| NOBLE HEALTHCARE MANAGEMENT, LLC | since 07/01/2015 |
| PERLSTEIN, YITZCHOK | since 07/01/2015 |
| PRESTIGE ADMINISTRATIVE SERVICES, LLC | since 01/01/2016 |

Owners and managers of Arbors at Carroll

OWNER

| 5% or greater direct ownership interest | |
|---|---|
| ARK OPCO GROUP, LLC (100%) | since 07/01/2015 |

| 5% or greater indirect ownership interest | |
|---|---|
| B&Y HEALTHCARE S CORP | since 07/01/2015 |
| B&Y TRUST | since 07/01/2015 |
| CODY HEALTHCARE S CORP | since 07/01/2015 |
| CRAIG FLASHNER 2007 TRUST | since 07/01/2015 |

| OPERATIONAL/MANAGERIAL CONTROL | |
|---|---|
| FLASHNER, CRAIG | since 07/01/2015 |
| NOBLE HEALTHCARE MANAGEMENT, LLC | since 07/01/2015 |
| PERLSTEIN, YITZCHOK | since 07/01/2015 |
| PRESTIGE ADMINISTRATIVE SERVICES, LLC | since 01/01/2016 |

Owners and managers of Arbors at Delaware

OWNER
5% or greater direct ownership interest

| | |
|---|---|
| ARK OPCO GROUP, LLC (100%) | since 07/01/2015 |

5% or greater indirect ownership interest

| | |
|---|---|
| B&Y HEALTHCARE S CORP | since 07/01/2015 |
| B&Y TRUST | since 07/01/2015 |
| CODY HEALTHCARE S CORP | since 07/01/2015 |
| CRAIG FLASHNER 2007 TRUST | since 07/01/2015 |

OPERATIONAL/MANAGERIAL CONTROL

| | |
|---|---|
| FLASHNER, CRAIG | since 07/01/2015 |
| NOBLE HEALTHCARE MANAGEMENT, LLC | since 07/01/2015 |
| PERLSTEIN, YITZCHOK | since 07/01/2015 |
| PRESTIGE ADMINISTRATIVE SERVICES, LLC | since 01/01/2016 |

Owners and managers of Arbors at Gallipolis

OWNER
5% or greater direct ownership interest

| | |
|---|---|
| ARK OPCO GROUP, LLC (100%) | since 07/01/2015 |

5% or greater indirect ownership interest

| | |
|---|---|
| B&Y HEALTHCARE S CORP | since 07/01/2015 |
| B&Y TRUST | since 07/01/2015 |
| CODY HEALTHCARE S CORP | since 07/01/2015 |
| CRAIG FLASHNER 2007 TRUST | since 07/01/2015 |

OPERATIONAL/MANAGERIAL CONTROL

| | |
|---|---|
| FLASHNER, CRAIG | since 07/01/2015 |
| NOBLE HEALTHCARE MANAGEMENT, LLC | since 07/01/2015 |
| PERLSTEIN, YITZCHOK | since 07/01/2015 |
| PRESTIGE ADMINISTRATIVE SERVICES, LLC | since 01/01/2016 |

Owners and managers of Arbors at Marietta

OWNER
5% or greater direct ownership interest

| | |
|---|---|
| ARK OPCO GROUP, LLC (100%) | since 07/01/2015 |

5% or greater indirect ownership interest

| | |
|---|---|
| B&Y HEALTHCARE S CORP | since 07/01/2015 |
| B&Y TRUST | since 07/01/2015 |
| CODY HEALTHCARE S CORP | since 07/01/2015 |
| CRAIG FLASHNER 2007 TRUST | since 07/01/2015 |

OPERATIONAL/MANAGERIAL CONTROL

| | |
|---|---|
| FLASHNER, CRAIG | since 07/01/2015 |
| NOBLE HEALTHCARE MANAGEMENT, LLC | since 07/01/2015 |
| PERLSTEIN, YITZCHOK | since 07/01/2015 |
| PRESTIGE ADMINISTRATIVE SERVICES, LLC | since 01/01/2016 |

Owners and managers of Arbors at Mifflin

OWNER
5% or greater direct ownership interest

| | |
|---|---|
| ARK OPCO GROUP, LLC (100%) | since 07/01/2015 |

5% or greater indirect ownership interest

| | |
|---|---|
| B&Y HEALTHCARE S CORP | since 07/01/2015 |
| B&Y TRUST | since 07/01/2015 |
| CODY HEALTHCARE S CORP | since 07/01/2015 |
| CRAIG FLASHNER 2007 TRUST | since 07/01/2015 |

OPERATIONAL/MANAGERIAL CONTROL

| | |
|---|---|
| FLASHNER, CRAIG | since 07/01/2015 |
| NOBLE HEALTHCARE MANAGEMENT, LLC | since 07/01/2015 |
| PERLSTEIN, YITZCHOK | since 07/01/2015 |
| PRESTIGE ADMINISTRATIVE SERVICES, LLC | since 01/01/2016 |

Owners and managers of Arbors at Milford

OWNER
5% or greater direct ownership interest

| | |
|---|---|
| ARK OPCO GROUP, LLC (100%) | since 07/01/2015 |

5% or greater indirect ownership interest

| | |
|---|---|
| B&Y HEALTHCARE S CORP | since 07/01/2015 |
| B&Y TRUST | since 07/01/2015 |
| CODY HEALTHCARE S CORP | since 07/01/2015 |
| CRAIG FLASHNER 2007 TRUST | since 07/01/2015 |

OPERATIONAL/MANAGERIAL CONTROL

| | |
|---|---|
| FLASHNER, CRAIG | since 07/02/2015 |
| NOBLE HEALTHCARE MANAGEMENT, LLC | since 07/01/2015 |
| PERLSTEIN, YITZCHOK | since 07/02/2015 |
| PRESTIGE ADMINISTRATIVE SERVICES, LLC | since 01/01/2016 |

Owners and managers of Arbors at Minerva

OWNER
5% or greater direct ownership interest

| | |
|---|---|
| ARK OPCO GROUP, LLC (100%) | since 07/01/2015 |

5% or greater indirect ownership interest

| | |
|---|---|
| B&Y HEALTHCARE S CORP | since 07/01/2015 |
| B&Y TRUST | since 07/01/2015 |
| CODY HEALTHCARE S CORP | since 07/01/2015 |
| CRAIG FLASHNER 2007 TRUST | since 07/01/2015 |

OPERATIONAL/MANAGERIAL CONTROL

| | |
|---|---|
| FLASHNER, CRAIG | since 07/01/2015 |
| NOBLE HEALTHCARE MANAGEMENT, LLC | since 07/01/2015 |
| PERLSTEIN, YITZCHOK | since 07/01/2015 |
| PRESTIGE ADMINISTRATIVE SERVICES, LLC | since 01/01/2016 |

## Owners and managers of Arbors at Oregon

OWNER
5% or greater direct ownership interest

| | |
|---|---|
| ARK OPCO GROUP, LLC (100%) | since 07/01/2015 |

5% or greater indirect ownership interest

| | |
|---|---|
| B&Y HEALTHCARE S CORP | since 07/01/2015 |
| B&Y TRUST | since 07/01/2015 |
| CODY HEALTHCARE S CORP | since 07/01/2015 |
| CRAIG FLASHNER 2007 TRUST | since 07/01/2015 |

OPERATIONAL/MANAGERIAL CONTROL

| | |
|---|---|
| FLASHNER, CRAIG | since 07/01/2015 |
| NOBLE HEALTHCARE MANAGEMENT, LLC | since 07/01/2015 |
| PERLSTEIN, YITZCHOK | since 07/01/2015 |
| PRESTIGE ADMINISTRATIVE SERVICES, LLC | since 01/01/2016 |

## Owners and managers of Arbors at Pomeroy

OWNER
5% or greater direct ownership interest

| | |
|---|---|
| ARK OPCO GROUP, LLC (100%) | since 07/01/2015 |

5% or greater indirect ownership interest

| | |
|---|---|
| B&Y HEALTHCARE S CORP | since 07/01/2015 |
| B&Y TRUST | since 07/01/2015 |
| CODY HEALTHCARE S CORP | since 07/01/2015 |
| CRAIG FLASHNER 2007 TRUST | since 07/01/2015 |

OPERATIONAL/MANAGERIAL CONTROL

| | |
|---|---|
| FLASHNER, CRAIG | since 07/01/2015 |
| NOBLE HEALTHCARE MANAGEMENT, LLC | since 07/01/2015 |
| PERLSTEIN, YITZCHOK | since 07/01/2015 |
| PRESTIGE ADMINISTRATIVE SERVICES, LLC | since 01/01/2016 |

## Owners and managers of Arbors at Springfield

OWNER
5% or greater direct ownership interest

| | |
|---|---|
| ARK OPCO GROUP, LLC (100%) | since 07/01/2015 |

5% or greater indirect ownership interest

| | |
|---|---|
| B&Y HEALTHCARE S CORP | since 07/01/2015 |
| B&Y TRUST | since 07/01/2015 |
| CODY HEALTHCARE S CORP | since 07/01/2015 |
| CRAIG FLASHNER 2007 TRUST | since 07/01/2015 |

OPERATIONAL/MANAGERIAL CONTROL

| | |
|---|---|
| FLASHNER, CRAIG | since 07/01/2015 |
| NOBLE HEALTHCARE MANAGEMENT, LLC | since 07/01/2015 |
| PERLSTEIN, YITZCHOK | since 07/01/2015 |
| PRESTIGE ADMINISTRATIVE SERVICES, LLC | since 01/01/2016 |

## Owners and managers of Arbors at Sylvania

OWNER
5% or greater direct ownership interest

| | |
|---|---|
| ARK OPCO GROUP, LLC (100%) | since 07/01/2015 |

5% or greater indirect ownership interest

| | |
|---|---|
| B&Y HEALTHCARE S CORP | since 07/01/2015 |
| B&Y TRUST | since 07/01/2015 |
| CODY HEALTHCARE S CORP | since 07/01/2015 |
| CRAIG FLASHNER 2007 TRUST | since 07/01/2015 |

OPERATIONAL/MANAGERIAL CONTROL

| | |
|---|---|
| FLASHNER, CRAIG | since 07/01/2015 |
| NOBLE HEALTHCARE MANAGEMENT, LLC | since 07/01/2015 |
| PERLSTEIN, YITZCHOK | since 07/01/2015 |
| PRESTIGE ADMINISTRATIVE SERVICES, LLC | since 01/01/2016 |

## Owners and managers of Arbors at Woodsfield

OWNER
5% or greater direct ownership interest

| | |
|---|---|
| ARK OPCO GROUP, LLC (100%) | since 07/01/2015 |

5% or greater indirect ownership interest

| | |
|---|---|
| B&Y HEALTHCARE S CORP | since 07/01/2015 |
| B&Y TRUST | since 07/01/2015 |
| CODY HEALTHCARE S CORP | since 07/01/2015 |
| CRAIG FLASHNER 2007 TRUST | since 07/01/2015 |

OPERATIONAL/MANAGERIAL CONTROL

| | |
|---|---|
| FLASHNER, CRAIG | since 07/01/2015 |
| NOBLE HEALTHCARE MANAGEMENT, LLC | since 07/01/2015 |
| PERLSTEIN, YITZCHOK | since 07/01/2015 |
| PRESTIGE ADMINISTRATIVE SERVICES, LLC | since 01/01/2016 |

## Owners and managers of Arbors West

OWNER
5% or greater direct ownership interest

| | |
|---|---|
| ARK OPCO GROUP, LLC (100%) | since 07/01/2015 |

5% or greater indirect ownership interest

| | |
|---|---|
| B&Y HEALTHCARE S CORP | since 07/01/2015 |
| B&Y TRUST | since 07/01/2015 |
| CODY HEALTHCARE S CORP | since 07/01/2015 |
| CRAIG FLASHNER 2007 TRUST | since 07/01/2015 |

OPERATIONAL/MANAGERIAL CONTROL

| | |
|---|---|
| FLASHNER, CRAIG | since 07/01/2015 |
| NOBLE HEALTHCARE MANAGEMENT, LLC | since 07/01/2015 |
| PERLSTEIN, YITZCHOK | since 07/01/2015 |
| PRESTIGE ADMINISTRATIVE SERVICES, LLC | since 01/01/2016 |

20. Defendants Prestige Healthcare and Ark Opco Group set the operating budgets for all sixteen Arbors of Ohio facilities.

21. All relevant policies and procedures at issue in this lawsuit were implemented by Defendants Prestige Healthcare and Ark Opco Group.

**Defendants' Employment of Plaintiff, the Potential Opt-Ins, and Class Members**

22. Plaintiff was employed by Defendants from October 2025 through December 2025 as a State Tested Nursing Assistant ("STNA"), a position that was paid on an hourly basis and was non-exempt from overtime pay.

23. The FLSA and Ohio law required Defendants to pay its non-exempt employees for all hours they were "suffer[ed] or . . . permit[ted] to work." 29 U.S.C. § 203(g); O.R.C. § 4111.03(D)(1).

24. Additionally, under the FLSA and Ohio law, an "employee must be completely relieved from duty" for a "meal period" to be non-compensable. 28 C.F.R. § 785.19(a). A meal break is not considered a bona fide meal period if the employee "is required to perform any duties, whether active or inactive, while [on break]." *Id.*

25. Defendants set the operating budgets for Arbors of Ohio facilities so low that hourly staff cannot take uninterrupted meal breaks. If hourly staff were to take uninterrupted half-hour meal breaks, patients would be left without requisite nursing care.

26. Defendants' written policy states that employees would receive a scheduled half-hour meal break, and further informs employees that a half-hour meal break will be automatically deducted from their pay for each shift of six hours or more.

27. Hourly employees at Arbors of Ohio never receive scheduled meal breaks.

28. Defendants' written policy instructs hourly employees that, if they miss a meal break, they must fill out a "time clock feedback form that indicates that they did not receive the required break."

29. Indeed, Aubhreny Davis routinely filled out such forms informing Defendants that she took no meal break.

30. Nevertheless, Defendants routinely ignored Plaintiff's time clock feedback forms, and deducted meal breaks on days that they had actual knowledge that she took no break.

31. Moreover, Defendants regularly scheduled employees, including Plaintiff Aubhreny Davis, to work 40 hours or more per workweek.

32. Aubhreny Davis routinely worked over 40 hours per workweek during her tenure with Defendants.

33. As a result of practices such as those above, Defendants knowingly deprived Plaintiff and similarly-situated non-exempt employees of regular and overtime pay.

34. Plaintiff and similarly-situated employees frequently worked forty or more hours per workweek on the clock, and thus, absent Defendants' failure to pay for all hours worked including by the practices described in Paragraphs 25 to 33, would have received overtime compensation, or additional overtime compensation.

**The Willfulness of Defendants' Violations**

34. Defendants knew that Plaintiff, the putative Opt-Ins, and the putative Class Members were entitled to compensation for all hours worked and overtime compensation for hours over 40 in a workweek under both federal and state law, or acted in a reckless disregard for whether they were so entitled.

35. Defendants intentionally and willfully circumvented the requirements of the FLSA and Ohio law. Defendants designed their scheduling, timekeeping, and payroll policies and practices in an attempt to reduce employees' paid hours and circumvent federal and state wage-and-hour laws.

36. Defendants knew that non-exempt employees regularly and routinely worked without meal breaks, and intentionally failed to establish a reasonable process for reporting missed meals so that employees could be paid for such periods.

37. Thus, with actual knowledge that non-exempt employees were required to work through meals, Defendants persisted with an unreasonable process for reporting missed meal breaks.

38. Defendants' practices described above did not change in any respect during Plaintiff's tenure.

## COLLECTIVE ACTION ALLEGATIONS

39. Plaintiff incorporates by reference the foregoing allegations as if fully written herein.

40. Plaintiff brings this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b), which provides that "[a]n action to recover the liability prescribed [by the FLSA] may be maintained against any employer . . . by any one or more employees for and on behalf of themselves and other employees similarly situated."

41. The Potential Opt-Ins who are "similarly situated" to Plaintiff with respect to Defendants' FLSA violations consist of:

> All non-exempt employees who worked one or more forty-hour workweeks at any of the Arbors of Ohio facilities during the period three years preceding the commencement of this action to the present.

42. Such persons are "similarly situated" with respect to Defendants' FLSA violations in that all were subject to and injured by Defendants' unlawful timekeeping and payroll practices, and all have the same claims against Defendants for unpaid overtime compensation, as well as for liquidated damages, attorneys' fees, and costs.

43. Conditional certification of this case as a collective action pursuant to 29 U.S.C. § 216(b) is proper and necessary, and therefore all such persons must be sent a Court-authorized notice informing them of the pendency of the action, giving them the opportunity to "opt in."

44. Upon information and belief, the number of similarly-situated persons exceeds 500 persons.

**CLASS ACTION ALLEGATIONS**

45. Plaintiff incorporates by reference the foregoing allegations as if fully written herein.

46. Pursuant to Fed. R. Civ. P. 23, Plaintiff also brings this case on behalf of herself and other members of one proposed class, defined as:

> All current and former non-exempt employees at Defendants' Arbors of Ohio facilities during the four years preceding the commencement of this action to the present who in any workweek (a) worked overtime hours, and (b) had deductions from time records for meal breaks that were never actually taken.

47. The class is so numerous that joinder of all Class Members is impracticable. Plaintiff avers, upon information and belief, that each class totals more than 500 employees of Defendants. The number of Class Members, as well as their identities, are ascertainable from records Defendants have maintained and were required to maintain pursuant to the FLSA and Ohio law. 29 U.S.C. § 211(c) & 29 C.F.R. § 215.2; Ohio Const. art. II, § 34a.

48. Plaintiff's claims are typical of the claims of other members of the Class Members. Plaintiff's claims arise out of the same uniform course of conduct by Defendants, and are based on the same legal theories as the claims of other Class Members.

49. Plaintiff will fairly and adequately protect the interests of the Class Members. Plaintiff's interests are not antagonistic to, but rather are in unison with, the interests of other Class Members. Plaintiff's counsel has broad experience in handling class action litigation, including wage-and-hour litigation, and are fully qualified to prosecute the claims of the Class Members in this case.

50. The questions of law or fact that are common to the Class Members predominate over any questions affecting only individual members. The primary questions that will determine Defendants' liabilities to the class, listed above, are common to the classes as a whole, and predominate over any questions affecting only individual Class Members.

51. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring Class Members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many Class Members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually. Certification of this case as a class action pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

## COUNT ONE
## (FLSA Overtime Violations)

52. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

53. Plaintiff brings this claim for violation of the FLSA's overtime provisions on behalf of herself and the Potential Opt-Ins who may join this case pursuant to 29 U.S.C. § 216(b). Plaintiff's written consent to be a party to this action pursuant to § 216(b) is filed herewith.

54. The FLSA required Defendants to pay their non-exempt employees overtime compensation at one and one-half times their "regular rate" for all hours worked in excess of forty hours in a workweek. 29 U.S.C. §§ 206, 207(e)(3); 29 C.F.R. 778.117.

55. Defendants failed to pay overtime compensation to Plaintiff and the Potential Opt-Ins for all hours worked in excess of forty hours in a workweek. As more fully described above, Defendants, in violation of law, required them to perform unpaid work off-the-clock, including during their unpaid meal breaks.

56. By engaging in that practice, Defendants willfully violated the FLSA and regulations thereunder that have the force and effect of law.

57. As a result of Defendants' violations of the FLSA, Plaintiff and the Potential Opt-Ins were injured in that they did not receive overtime compensation due to them pursuant to the FLSA. Section 216(b) of the FLSA entitles them to an award of unpaid overtime compensation, as well as "an additional equal amount as liquidated damages." Section 216(b) further provides that "[t]he court … shall … allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

**COUNT TWO**
**(Unjust Enrichment)**

58. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

59. Plaintiff brings this claim for unjust enrichment on behalf of herself and the putative Class Members.

60. At all times relevant, Defendants knew that hourly employees were conferring a benefit upon Defendants by working regular and overtime hours without compensation as a result of the practices described above.

61. All Defendants were unjustly enriched by the unlawful and inequitable practices described above, as the revenues from Stow Opco flowed through to Prestige Healthcare and Ark Opco.

62. Defendants knew that they were receiving a benefit by retaining and utilizing the labor of Plaintiff and the Class Members while providing no compensation. Defendants intentionally designed their compensation structure so as to obtain that benefit.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Conditionally certify this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b) and direct that Court-approved notice be issued to similarly-situated persons informing them of this action and enabling them to opt in;

B. Certify this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of Plaintiff and other Class Members;

C. Enter judgment against Defendants and in favor of Plaintiff, the Opt -Ins who join this case pursuant to 29 U.S.C. § 216(b), and the Class;

D. Award compensatory damages to Plaintiff and the Opt-Ins who join this case pursuant to 29 U.S.C. § 216(b) in the amount of their unpaid wages and commissions, as well as liquidated damages in an equal amount;

E. Award compensatory damages to Plaintiff and the Class Members in the amount of their unpaid wages;

F. Award Plaintiff her costs and attorneys' fees incurred in prosecuting

this action and such further relief as the Court deems equitable and just.

Respectfully submitted,

*/s/ Scott D. Perlmuter*
Scott D. Perlmuter (0082856)
Kathleen R. Harris (0088079)
4106 Bridge Avenue
Cleveland, Ohio 44113
216-308-1522
Fax: 888-604-9299
scott@tittlelawfirm.com
katie@tittlelawfirm.com

Attorneys for Plaintiff

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

*/s/ Scott D. Perlmuter*
Scott D. Perlmuter (0082856)